**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 2:59 pm, Sep 06, 2013

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE: | Chapter 13 Case |
| | Number <u>12-12316</u> |
| VERONICA BROWN, | |
| | |
| Debtor | |

<u>OPINION AND ORDER</u>

Before the Court is an Objection to Confirmation filed by Huon Le, Chapter 13 Trustee ("Trustee"). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2) and the Court has jurisdiction pursuant to 28 U.S.C. §1334. For the following reasons, the Trustee's objection to confirmation is overruled.

<u>FINDINGS OF FACT</u>

Veronica Brown ("Debtor") filed a chapter 13 bankruptcy petition on December 19, 2012. According to her means test, Debtor is an above-median debtor with an annual income of $66,996.00 while the median in Georgia for a household of two is $50,901.00. Dckt. No. 1, means test. On line 57 of her means test, entitled "Deduction for special circumstances" Debtor lists student loan payments in the amount of $500.00/month. <u>Id.</u> The Department of Education has filed two unsecured claims; one in the amount of $41,381.22 and the other in the amount of $58,590.49. Claim Nos. 5

and 6.

Debtor has filed a 60 month chapter 13 plan proposing to pay: directly on her student loan debt $500.00 per month; $340.00/month for her daughter's private school tuition; and a 1% dividend or $100.00, whichever is greater, to her general unsecured creditors. Dckt. No. 4.

The Trustee objects to Debtor's plan stating Debtor is not submitting all of her disposable income to the plan. Dckt. No. 20. The Trustee objects to Debtor taking a $500.00 deduction on the means test as a "special circumstance" for her student loans and Debtor's payment of her daughter's private school tuition while paying a 1% (or $100.00) dividend to her unsecured creditors. Dckt. No. 20. The Trustee states that a 100% plan is required for Debtor to continue to pay these expenses. Dckt. No. 20. The Trustee calculates that if the student loan payment is not allowed as a deduction, the means test would require a $20,380.80 dividend to general unsecured creditors, or approximately a 16% dividend to unsecured creditors. Dckt. No. 33.

Debtor's schedules reflect a monthly income of $4,137.00 and expenses of $3,863.00 which include deductions for the

2

AO 72A
(Rev. 8/82)

$500.00/month in her student loan payments and $340.00/month[1] for private school tuition for a net monthly disposable income of $274.00. Dckt. No. 1, Schs. I and J.

As to the student loans, Debtor testified she is employed as a supervisor at Club Car. She obtained her bachelor's degree from Augusta State University and her master's degree ("MBA") from Phoenix University in October of 2011. Debtor worked diligently and obtained her higher education while employed at Club Car and raising her daughter as a single parent. Debtor owes approximately $100,000.00 in student loans and is paying $300.00/month on her Stafford loan and $200.00/month on her Sallie Mae Consolidated Loan. Both of these payments include a 6% interest component. Debtor testified her loans have been in forbearance and she made her first payment in February 2013, two months after she filed for bankruptcy. Debtor testified her loans are eligible for forbearance, but they would continue to accrue interest while in forbearance.

Debtor stated she was promoted to supervisor after she obtained her bachelor's degree. While Debtor testified other people have lost jobs as supervisors because they did not have a bachelor's

---

[1]  At the confirmation hearing, contrary to her schedules, Debtor testified the private school tuition is actually $350.00/month.

3

degree, Debtor obtained her bachelor's degree before becoming a supervisor. She has not been promoted since obtaining her MBA nor has she been told she had to get a MBA degree in order to maintain her job at Club Car.

Debtor's 12 year-old daughter that was born premature and has been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) as well as some speech and auditory difficulties. Debtor testified her daughter has attended Columbia County Christian Academy since first grade. Her daughter also attends a special speech/language program at Lakeside Middle School (a Columbia County Public School) one day a week. H'rg held March 8, 2013, Debtor's Ex. Nos. 1 and 2. In her brief, Debtor expressed concerns as to possible bullying her daughter may be subject to in the public schools due to the difficulty in relating to peers and adults, along with her speech and auditory problems, as expressed in the reports. Debtor testified she does not think Richmond County Public schools could provide the level of special attention her daughter needs. Debtor testified she had not looked into Richmond County Public Schools except for Davison Fine Arts, a public magnet school, which her daughter applied for but did not score high enough on the math portion of the admissions test to be admitted. H'rg held March 8, 2013, Debtor's Ex. No. 3. Debtor plans to have her daughter retake

4

the admissions test for Davison Fine Arts next year.

## CONCLUSIONS OF LAW

There are three main issues in this case. The first issue is whether the student loan payment is a special circumstance. The second issue is whether Debtor should be allowed to make her student loan payments directly to the creditors, as proposed. The third issue is whether Debtor's payments above the statutory limit for private school tuition constitute special circumstances for her daughter under the facts of this case. The Trustee argues neither of these payments should be deducted from Debtor's disposable income and therefore these monthly payments should be committed to paying her creditors.

In a chapter 13 bankruptcy case an individual is able to obtain a discharge of many of her debts if she pays all of her disposable income into the chapter 13 plan during the life of the plan. See 11 U.S.C. §1325(b)(1)(B) and §1328. "Disposable income" is defined in pertinent part as "current monthly income" less "amounts reasonably necessary to be expended" for the "maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. §1325(b)(2)(A)(i). With the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Congress instituted a means test which provides a formula to calculate a

5

debtor's disposable income. "For a debtor whose income is above the median for his State, the means test identifies which expenses qualify as 'amounts reasonably necessary to be expended.'" <u>Ransom v. FIA Card Servs., N.A.</u>, ___ U.S.___, 131 S.Ct. 716, 721-22 (2011).

Pursuant to 11 U.S.C. §1325(b)(3), "amounts reasonably necessary to be expended" for above median debtors must be determined pursuant to 11 U.S.C. §707(b)(2)(A) and (B). Section 707(b)(2)(A) and (B) provides in pertinent part:

> (A)(ii)(I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent. Such expenses shall include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the spouse of the debtor, or the dependents of the debtor. Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts
>
> .
> .
> .
>
> (IV) In addition, the debtor's monthly expenses may include the actual expenses for each dependent child less than 18 years of age, not to exceed $1,875 per year per child, to attend a private or public elementary or secondary school if the debtor provides documentation of

6

such expenses and a detailed explanation of why such expenses are reasonable and necessary, and why such expenses are not already accounted for in the National Standards, Local Standards, or Other Necessary Expenses referred to in subclause (I)

.
.
.

(B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
(ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide-

(I) documentation for such expense or adjustment to income; and
(II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
(iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.

11 U.S.C. §707(b)(2)(A) and (B). In the case sub judice, Debtor is above median and therefore her expenses must be analyzed pursuant to section 707(b)(2) of the Bankruptcy Code. Debtor's proposed plan raises several issues addressing the tension between her proposed 1% dividend to her general unsecured creditors and her proposed deductions as they relate to her student loan repayment plan and her

7

daughter's private school tuition.

### Student Loan Payments As Special Circumstances.

The first issue is whether Debtor's student loans constitute "special circumstances" that cause higher household expenses for which there is no reasonable alternative. 11 U.S.C. §707(b)(2)(B). Section 707(b)(2) provides:

> B)(i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

11 U.S.C. §707(b)(2). "Application of subparagraph (B) in the chapter 13 context is not as simple [as in a chapter 7 case]. In a chapter 7 case, it permits a debtor to rebut a presumption of abuse that arises under the 'means test' calculations of §707(b)(2)(A) by demonstrating 'special circumstances' that 'justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.'" In re Knight, 370 B.R. 429, 434 (Bankr. N.D. Ga. 2007).

In this case, it is undisputed that Debtor is above-median and therefore 11 U.S.C. §1325(b)(3) applies to determine her disposable income. Section 1325(b)(3) incorporates §707(b)(2)(A)

8

and (B) to determine amounts reasonably necessary to be expended. 11 U.S.C. §1325(b)(3). Because §707(b)(2)(A)(ii)(I) excludes from a debtor's monthly expenses the payment of debt, repayment of Debtor's student loan debt is not a permissible deduction under §707(b)(2)(A). 11 U.S.C. §707(b)(2)(A)(ii)(I); In re Lightsey, 374 B.R. 377, 383 (Bankr. S.D. Ga. 2007); In re Knight, 370 B.R. at 437 ("The clear language of [§707(b)(2)(A)], therefore, precludes deduction of the student loan payments as a 'reasonably necessary' expenditure.").

Because the student loan payments are not permissible deductions under §707(b)(2)(A), Debtor must look to §707(b)(2)(B) to adjust her disposable income as a "special circumstance" "for which there is no reasonable alternative." The means test, line 57 states:

> Deduction for special circumstances. If there are special circumstances that justify additional expenses for which there is no reasonable alternative, describe the special circumstances and the resulting expenses in lines a-c below. If necessary, list additional entries on a separate page. Total the expenses and enter the total in Line 57. You must provide your case trustee with documentation of these expenses and you must provide a detailed explanation of the special circumstances that make such expense necessary and reasonable.

Dckt. No. 1. To establish "special circumstances," Debtor must provide an itemization of each additional expense or adjustment of

9

income and provide: "(I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." In re Cribbs, 387 B.R. 324 (Bankr. S.D. Ga. 2008).

Courts are split on whether student loan payments constitute "special circumstances." The first line of cases apply a narrow interpretation of the statutory language and hold that student loans do not qualify as a "special circumstance" as they are not unforeseeable, unavoidable, or beyond a debtor's control. See In re Lightsey, 374 B.R. at 381; In re Maura, 491 B.R. 493, 511 (Bankr. E.D. Mich. 2013); In re Carrillo, 421 B.R. 540, 544-45 (Bankr. D. Ariz. 2009); As Judge Davis explains:

> [T]he exception does not permit every conceivable unfortunate or "unfair" circumstance to rebut the presumption of abuse, but includes only those circumstances that cause higher household expenses or adjustments of income "for which there is no reasonable alternative," i.e., they are unforeseeable or beyond the control of the debtor. See In re Delunas, 2007 WL 737763, at *2 (Bankr. E.D. Mo.2007) (concluding that the Chapter 7 debtors did not rebut Section 707's presumption of abuse as they failed to demonstrate "special circumstances" that justified monthly rent payments in excess of their allowable deduction for housing); In re Sparks, 360 B.R. 224, 230 (Bankr. E.D. Tex. 2006) ("[The special circumstances exception] must be strictly construed to allow only those expenses which

10

> are truly unavoidable to the debtor."); <u>In re
> Tranmer</u>, 355 B.R. 234, 251 (Bankr. D. Mont.
> 2006) ("Section 707(b)(2)(B)'s 'special
> circumstances' contemplates circumstances
> beyond a debtor's reasonable control.").

<u>In re Lightsey</u>, 374 B.R. at 382.

A second approach set forth in <u>In re Knight</u>, 370 B.R. 429 (Bankr. N.D. Ga. 2007) holds that student loans qualify as "special circumstances" because public policy encourages pursuit of higher education and student loans are non-dischargeable so a debtor has no realistic option other than to pay the student loans during the bankruptcy.  <u>In re Knight</u>, 370 B.R. at 438-39; <u>see also</u> <u>In re Delbecq</u>, 368 B.R. 754 (Bankr. S.D. Ind. 2007)(concluding that paying her credit card debt instead of making student loan payments was not a reasonable alternative for the debtor as she would end up owing substantially more in non-dischargeable student loans).

A third approach is to examine the motivation and reasons the debtor acquired the student loan.  <u>See</u> <u>In re Johnson</u>, 446 B.R. 921 (Bankr. E.D. Wis. 2011)(debtor argued severe obesity caused debtor to have to pursue less physical job which required a higher education; however, debtor failed to carry her burden of proof as there was no documentation such as doctor notes to substantiate the need for a less physical job); <u>see also</u> <u>In re Pageau</u>, 383 B.R. 221 (Bankr. D.N.H. 2008)(pursuit of higher education solely for career

11

advancement or increased salary is not "special circumstance" as the student loan must be necessitated by permanent injury, disability, or an employer closing or layoffs); see also In re Cribbs, 387 B.R. 324, 329 (Bankr. S.D. Ga. 2008)(finding that "special circumstances" must be similar to the examples set out in the statute, which courts have characterized as being unanticipated, unavoidable and beyond Debtor's control but finding special circumstances under the facts of the case).

After considering these approaches, I find the approach set forth in Pageau and Cribbs complies with the statutory language of 11 U.S.C. §707(b). While Congress did not define "special circumstance" it gave illustrative examples, such as a serious medical condition; or a call or order to active duty in the Armed Forces, which are circumstances beyond a debtor's control or at least extraordinary or exceptional for which there is no reasonable alternative. See 11 U.S.C. §707(b)(2)(B)(I); In re Maura, 2013 WL 1730040 at *15. I reject the notion that just because a student loan debt is non-dischargeable makes it a "special circumstance." As Judge Davis stated:

> If non-dischargeability was the standard for a special circumstance, Congress would have said so. Those courts concluding that 'special circumstances' include non-dischargeable student loan obligations arguably will have to apply this standard to every other

12

> non-dischargeable obligation, [including] debts
> arising not only from student loans but also
> from fraud, embezzlement, DUI, and the like.
> See 11 U.S.C. §§523 and 1328(a). Every one of
> these non-dischargeable obligations could
> qualify as debts for which a debtor has no
> reasonable alternative but to continue payments
> to avoid economic harm, and there is no
> suggestion in Section 707(b)(2)(B) that courts
> have been delegated the policy decision of
> deciding that some non-dischargeable debts are
> 'good' and some are 'bad' so as to permit
> treating some but not all as a 'special
> circumstance.'

In re Lightsey, 374 B.R. at 381-82 n. 3.

Debtor argues Lightsey is distinguishable as it is a chapter 7 case and Debtor filed a chapter 13 which is what the court in Lightsey suggested the debtor must do. There is no doubt Congress intended for the means test to require more debtors to file chapter 13 petitions, rather than chapter 7 petitions. While the Lightsey court did not discuss whether a student loan would be a special circumstance in a chapter 13, the court was interpreting the exact statutory language in §707(b)(2) at issue in this case and found student loan payments do not constitute a special circumstance. I disagree with Debtor's interpretation of footnote 3 in Lightsey.

While it is commendable to try and advance one's education for career and personal advancement, the issue is whether these educational costs constitute "special circumstances" under the

13

parameters established by Congress in §707(b)(2). There may be instances where a student loan constitutes a "special circumstance." See In re Pageau, 383 B.R. 221 (Bankr. D.N.H. 2008)("special circumstances" may be found where the student loan was necessitated by permanent injury, disability, or an employer closing or layoffs); see also In re Cribbs, 387 B.R. 324, 329 (Bankr. S.D. Ga. 2008)(finding that "special circumstances" must be similar to the examples set out in the statute, and finding special circumstances in the repayment of a 401(k) loan). However, under the facts of this case, the student loans do not qualify as a "special circumstance" warranting a deduction on her means test. There is nothing unique or special about Debtor's student loans. She obtained her loans to better herself and to obtain promotions, but that does not make the loans special or unique. She was never layed off from work or forced to get an education in order to maintain her job. The fact that a bachelor's degree may have later become a requirement does not make her loan a special circumstance. For these reasons, while Debtor's pursuit of higher education is admirable, it is not a special circumstance under §707(b)(2).

### Treatment of Student Loans in Debtor's Plan.

Because the student loan payments do not constitute "special circumstances" and therefore may not be deducted from

14

Debtor's disposable income, the Court must determine whether the provisions of 11 U.S.C. §1322 allow for Debtor to pay her student loan debt directly to the lender as proposed.  The two main issues to consider in regards to Debtor's proposed treatment of the student loans are whether allowing her to maintain her student loan payments pursuant to §1322(b)(5) unfairly discriminates under §1322(b)(1) and whether §1322(b)(10) prohibits Debtor from paying post-petition interest on her student loan debt.

Debtor argues that pursuant to 11 U.S.C. §1322(b)(5), she may cure defaults and maintain regular payments on any obligation on which the last payment is due after the chapter 13 final plan payment, long-term debt.  11 U.S.C. §1322(b)(5).  Conversely, the Trustee argues §1322(b)(1) and §1322(b)(10) prohibit Debtor's payment of her long-term student loan debt to the detriment of her general unsecured creditors.  Section 1322(b) states in relevant part:

> Subject to subsections (a) and (c) of this section, the plan may--
>
> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims
>
> .

15

.
.

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; and

.
.
.

(10) provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims

11 U.S.C. §1322(b)(1), (5) and (10).

Several courts have struggled with reconciling these three provisions as applied to student loans.  Compare In re Pracht, 464 B.R. 486 (Bankr. M.D. Ga. 2012)(reconciling §1325(b)(1) and (b)(5) allowing student loan to be paid pursuant to 11 U.S.C. §1325(b)(1) and (b)(5) and stating, "section 1325(b)(1)(B) does not address how the debtor's projected disposable income is to be allocated. . . . As long as all of the debtor's projected disposable income is being paid to creditors with unsecured claims, as is the case here, the plan complies with section 1325(b)(1)(B)."); In re Webb, 370 B.R.

16

418 (Bankr. N.D. Ga. 2007)(reconciling §1325(b)(1), (b)(5) and (b)(10) and concluding that paying long term debts such as the student loan did not unfairly discriminate); In re Freeman, 2006 WL 6589023 *2, n. 1 (Bankr. N.D. Ga. Dec. 22, 2006)(curing and maintaining student loan debt does not unfairly discriminate; however, payment on an accelerated basis may constitute unfair discrimination); In re Jackson, Chap. 13 Case No. 05-85212 slip op. (Bankr. N.D. Ga. March 16, 2006)(construing §1322(b)(1), (b)(5) and (b)(10) and holding that paying long term student loans directly while paying a 1% dividend to creditors is allowed under the Code and does not unfairly discriminate); In re Johnson, 446 B.R. at 925(a chapter 13 plan may separately classify student loans without discriminating unfairly); In re Pageau, 383 B.R. at 229 ("[I]n this district, student loan debts may be paid directly and separately during a debtor's chapter 13 plan in accordance with §1322(b)(5) as long as payments are to maintain and keep current long-term student loan debt, i.e., loans that mature after plan completion, with no acceleration of that debt."); with In re Stull, 489 B.R. 217 (Bankr. D. Kan. 2013)(the court held that while a debtor's plan did not unfairly discriminate in favor of the student loan, the payment of interest on the student loan without fully repaying other unsecured debts violated §1322(b)(10)); In re Kubeczko, 2012 WL 2685115 *6-7

17

(Bankr. D. Colo. July 6, 2012)(noting that §1322(b)(10) was enacted after §1322(b)(1) and (5) and Congress is presumed to know the effect it would have and acknowledging §1322(b)(10) makes it extremely difficult to provide a treatment for a non-dischargeable unsecured claim that is any different from other unsecured claims); In re Edmonds, 444 B.R. 898 (Bankr. E.D. Wis. 2010)(concluding chapter 13 plan which provides for post-petition interest on student loan debts violates §1322(b)(10)).

In seeking to harmonize §1322(b)(1), (b)(5) and (b)(10), I agree with the courts that find the student loan separate classification must undergo the unfair discrimination analysis.[2] See In re Pracht, 464 B.R. at 490 (agreeing with the majority of courts and finding a separate classification for student loan debts does not unfairly discriminate). As Freeman states:

---

[2] In her brief Debtor also argues she is entitled to separately classify her student loan debt pursuant to 11 U.S.C. §1322(b)(1) which provides for different treatment of consumer debt of the debtor in which an individual is liable with the debtor. Debtor argues all student loans have a guarantor whether it is the Federal Government, the Georgia student loan program or any other organization and therefore her loan by definition has a guarantor. I disagree with this analysis. First, Debtor is the principal obligor on this debt not a guarantor. Second, §1322(b)(1) requires that the guarantor be an "individual" be liable on the debt and an "individual" means a natural person. See Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1551 (11th Cir. 1996)(recognizing the term "individual" is not defined in the Bankruptcy Code and applying its plain meaning to mean a natural person); In re Georgia Scale Co., 134 B.R. 69, 70 (S.D. Ga. 1991).

18

> The Eleventh Circuit Court of Appeals has noted the "interlocking nature of the bankruptcy code." In re Bateman, 331 F.3d 821, 825 (11th Cir. 2003). In interpreting the Code's provisions, the court stated that the provisions must be "read to be consistent whenever possible" and, "[i]f the two provisions may not be harmonized, then the more specific will control over the general." Id.

In re Freeman, 2006 WL 6589023 at *2. Requiring the separate student loan classification to be scrutinized for unfair discrimination under §1322(b)(1) allows §1322(b)(1) and (b)(5) to be read in a consistent manner. The statute allows for discrimination, just not unfair discrimination. See In re Pracht, 464 B.R. at 490 ("Section 1322(b)(1) prohibits only such discrimination as is unfair to any class of unsecured claims and, conversely, sanctions such differences in treatment as are fair.") citing Bentley v. Boyajian (In re Bentley), 266 B.R. 229, 237 (1st Cir. B.A.P. 2001).

In determining whether the treatment of this debt as a separate classification is unfair discrimination, most courts have applied the test set forth in In re Leser, 939 F.2d 669, 672 (8th Cir. 1991) and In re Wolff, 22 B.R. 510 (9th Cir. B.A.P 1982). Under the Leser/Wolff test, a court considers the fairness of proposed discrimination by looking at whether:

1. the discrimination has a reasonable basis;

2. the debtor can carry out a plan without the discrimination;

19

3. the discrimination is proposed in good faith; and

4. the degree of discrimination is directly related to the basis or rationale for the discrimination.

<u>In re Leser</u>, 939 F.2d at 672; <u>In re Wolff</u>, 22 B.R. at 512.

As to the first factor, the discrimination has a reasonable basis in that it is a long term non-dischargeable debt and §1322(b)(5) allows for this discrimination by allowing the cure and maintenance of long-term unsecured debt. Debtor's fresh start also would be severely hampered if she is not allowed to maintain her student loan payments. The second factor weighs against Debtor as she could carry out a plan without the discrimination, however, as previously stated, her fresh start would be severely hampered. See <u>In re Jackson</u>, Chap. 13 Case No. 05-85212 <u>slip op.</u> at 6-7. As to whether the plan is proposed in good faith, the Trustee argues Debtor has not proposed the plan in good faith as she has not sought another forbearance of the student loans and only started making the payments after the bankruptcy started and is seeking to avoid the Trustee's fee. Even if the loans continue in forbearance, interest continues to accrue. Her efforts to avoid the additional outstanding balance does not indicate a lack of good faith. With her limited financial means, she is seeking to preserve her fresh start and has proposed a plan that she in good faith argues is

20

allowable under the Bankruptcy Code.  See In re Pracht, 464 B.R. at 492 (allowing the debtor to discriminate in favor of the student loan debt advances the goal of the debtor's fresh start).  This discrimination "may be the most practical solution to the dilemma debtors face."  In re Webb, 370 B.R. at 424.  There is no evidence Debtor has not acted in good faith.  As to the last factor, according to the claims register, Debtor has approximately $128,669.56 in general unsecured claims.  Student loans make up the large majority of that amount in the amount of approximately $100,000.00.  According to the Trustee, if the Trustee's objections are sustained, Debtor would pay an approximate $20,380.80 dividend to general unsecured creditors which is an approximate 16% dividend as opposed to the 1% dividend proposed in her plan.  The student loan debt is approximately 78% of her unsecured debt.  The spread of 1%-17% is significant, but it is directly related to the rationale for the discrimination of preserving the Debtor's fresh start and is not unfair.  See In re Pracht, 464 B.R. at 492; In re Webb, 370 B.R. at 424; In re Jackson, Chap. 13 Case No. 05-85212 slip op. at 6-7; In re Freeman, 2006 WL 6589023 at *2, n. 1.  For these reasons, I find the separate classification and direct payment do not constitute unfair discrimination.

Turning now to reconciling §1322(b)(1) and (b)(5) and

21

§1322(b)(10). Section 1322(b)(10) states that a plan may "provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims." 11 U.S.C. §1322(b)(10). Section 1322(b)(5) gives debtors the ability to cure long term debts and maintain the regular payments on those debts whether they be secured or unsecured. 11 U.S.C. §1322(b)(5). The payment of interest is a requirement for a debtor to be able to "cure and maintain" payments under §1322(b)(5). See In re Freeman, 2006 WL 6589023 at *1 ("curing a default and maintaining payments on an unsecured, long-term debt requires the debtor to pay interest on the balance of the debt") citing In re Hanson, 310 B.R. 131, 134 (Bankr. W.D. Wis. 2004)("'Maintenance of payments' under 11 U.S.C. §1322(b)(5) means that the debtor must respect the interest rate and the monthly payment in the original contract during the plan.").

Courts have struggled with harmonizing §1322(b)(5) with §1322(b)(10). Some courts have determined that §1322(b)(10) is ambiguous with scant legislative history and allow interest on the student loan payments. In re Jackson, Chap. 13 Case No. 05-85212

22

slip op. at 2.  Other courts have determined that §1322(b)(5) would
be rendered meaningless if §1322(b)(10) applies to long term debt
because the cure and maintenance provision of §1322(b)(5) requires
the payment of interest and pursuant to §1328(a) any long term debt
treated under §1322(b)(5) already is non-dischargeable.  See In re
Freeman, 2006 WL 6589023 at *2; In re Webb, 370 B.R. at 422.  As
Freeman explains:

> The Trustee argues that section 1322(b)(10) is
> the more specific provision because it directly
> prohibits the payment of interest on unsecured
> debts that are nondischargeable, absent full
> payment to other unsecured creditors, and
> because, even when section 1322(b)(10) is
> applicable, section 1322(b)(5) remains
> available to debtors to cure and maintain
> (through the payment of interest) debts that
> are not nondischargeable.  This argument has
> two flaws.  First, if a debtor chooses to cure
> and maintain a long-term debt, the debt becomes
> nondischargable under section 1328(a)(1).
> Accordingly, if the Trustee is correct that
> section 1322(b)(10) should be considered an
> exception to section 1322(b)(5), it is an
> exception that swallows the rule.  In other
> words, it would be impossible for a debtor to
> pay interest on a long-term debt as part of a
> cure and maintenance of that debt under section
> 1322(b)(5), even if the debt is not
> nondischargeable under any provision of section
> 523(a).  Second, one could just as easily argue
> that section 1322(b)(5) is the more specific
> provision because not all nondischargeable
> debts are entitled to be cured and maintained
> in accordance with section 1322(b)(5), but only
> those with payment terms that extend beyond the
> plan term.  This leaves a large realm of
> nondischargeable, short-term debts to which

23

> section 1322(b)(10) would continue to apply if
> section 1322(b)(5) constitutes an exception to
> section 1322(b)(10).

In re Freeman, 2006 WL 65892023 at *2.

Other courts take a contrary view and find §1322(b)(10) reconcilable with §1322(b)(1) and (b)(5) as it only prohibits interest being paid on unsecured non-dischargeable debts while allowing interest on long term secured debts. See In re Stull, 489 B.R. 217 (Bankr. D. Kan. 2013)(the court held that while a debtor's plan did not unfairly discriminate in favor of the student loan, the payment of interest on the student loan without fully repaying other unsecured debts violated §1322(b)(10)); see also In re Kubeczko, 2012 WL 2685115 *6-7 (Bankr. D. Colo. July 6, 2012)(noting that §1322(b)(10) was enacted after §1322(b)(1) and (5) and Congress is presumed to know the effect it would have and acknowledging §1322(b)(10) makes it extremely difficult to provide a treatment for a non-dischargeable unsecured claim that is any different from other unsecured claims); In re Edmonds, 444 B.R. 898 (Bankr. E.D. Wis. 2010)(concluding chapter 13 plan which provides for post-petition interest on student loan debts violates §1322(b)(10)).

A court must, "when possible, interpret statutory language so as to give effect to each provision" and where there is no "positive repugnancy" between provisions, "give effect to both." In

24

re Piazza, 719 F.3d 1253, 1266 (11th Cir. 2013). I find
§1322(b)(1), (b)(5) and (b)(10) can be read together, and find the
analysis set forth in In re Freeman and In re Webb to be the more
persuasive interpretation. Section 1322(b)(5) deals specifically
with curing and maintaining long term debts. Section 1322(b)(5) was
not amended or restricted in 2005 when Congress adopted
§1322(b)(10). While §1322(b)(5) allows interest on secured and
unsecured long term debt, §1322(b)(10) restricts interest payments
on non-dischargeable unsecured debts that are not eligible for cure
and maintenance under §1322(b)(5), such as debts that are non-
dischargeable due to a debtor's fraud. See In re Freeman, 2006 WL
6589023 at *2 (there is "a large realm of nondischargeable,
short-term debts to which section 1322(b)(10) would continue to
apply if section 1322(b)(5) constitutes an exception to section
1322(b)(10)."); Hon. W. Homer Drake, Hon. Paul W. Bonapfel & Adam M.
Goodman, Chapter 13 Practice & Procedure §9E:5 (2013)(stating
§1322(b)(10) does not apply to long term debt such as a student loan
but would apply to a non-dischargeable debt due to debtor's fraud).
This interpretation harmonizes the two provisions without preventing
a debtor from fully utilizing §1322(b)(5) to cure and maintain
payments on long term non-dischargeable debt, a key component to a
debtor's fresh start. Arguably, the courts holding that

25

§1322(b)(10) prevents debtors from using (b)(5) to cure and maintain student loan payments effectively strike out the language "unsecured claim . . . on which the last payment is due after the date on which the final payment under the plan is due" from §1322(b)(5).  See In re Freeman, 2006 WL 6589023 at *2 ("if the Trustee is correct that section 1322(b)(10) should be considered an exception to section 1322(b)(5), it is an exception that swallows the rule.").  A court should if possible, give meaning to every word in a statute and avoid a construction that would render words as mere surplusage. Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979)("In construing a statute we are obliged to give effect, if possible, to every word Congress used."); see also Clark v. Uebersee Finanz-Korporation, 332 U.S. 480, 488 (1947)(provisions within a statute are read to be consistent whenever possible); In re Piazza, 719 F.3d 1253, 1267 (11th Cir. 2013)(court must "give[s] effect to both" without "render[ing] one or the other wholly superfluous.").

Furthermore, it has been the long standing practice to allow debtors to utilize §1322(b)(5) to pay the student loans directly.  In re Pageau, 383 B.R. at 229 ("[I]n this district, student loan debts may be paid directly and separately during a debtor's chapter 13 plan in accordance with §1322(b)(5) as long as payments are to maintain and keep current long-term student loan

26

debt, i.e., loans that mature after plan completion, with no acceleration of that debt."); In re Delbecq, 368 B.R. at 759 ("[I]n this jurisdiction, the Court has historically allowed debtors to classify separately student loan indebtedness pursuant to 11 U.S.C. §1322(b)(5)."); In re Alexander, 1997 WL 33476360 *3, n. 6 (Bankr. S.D. Ga. Nov. 20, 1997)("In previous cases, this Court has approved maintenance of payments on a government guaranteed student loan under 11 U.S.C. §1322(b)(5), . . . and will continue to approve plans which make such provisions for monthly payments to a creditor equal to that required pre-petition under the loan documents with the balance at the end of the five-year period to be excepted from discharge under §1328(a)(1)."). This is important because absent a clear indication that Congress intended such departure, a court "will not read the Bankruptcy Code to erode past bankruptcy practice." Hamilton v. Lanning, __ U.S.__, 130 S.Ct. 2464, 2473 (2010).

For these reasons, I conclude that §1322(b)(1), (b)(5) and (b)(10) are not irreconcilable. This interpretation properly, "give[s] effect to" subsections (b)(1), (b)(5) and (b)(10) without "render[ing] one or the other wholly superfluous." See In re Piazza, 719 F.3d at 1267. As a result, I find Debtor's plan does not unfairly discriminate and her proposal to pay interest on her

27

student loan is allowed under the Bankruptcy Code.

### Private School Tuition As a Special Circumstance.

The Court also must determine whether the Bankruptcy Code allows Debtor to pay for her daughter's private school tuition while paying a 1% dividend to her unsecured creditors. The Bankruptcy Code allows expenses for private school tuition up to $1,775.00/year[3] with documentation of the expenses and an explanation of why they are "reasonable and necessary." 11 U.S.C. §707(b)(2)(A)(ii)(IV). Debtor seeks to pay approximately $3,150.00/year for her daughter's private school, well in excess of the $1,775.00/year allowable statutory amount. Debtor took a deduction for the private school tuition on her means test pursuant to §707(b)(2)(A)(ii)(IV). Debtor did not list any private school tuition expense as a "special circumstance" on the means test; however at the hearing she argued that the difference between the amount she actually pays and the statutory allowance constitute "special circumstances."

At the hearing on confirmation, Debtor established that the payment of the private school tuition is a "reasonable and necessary" expense. I also find the facts of this case are

---

[3] On February 21, 2013 this figure increased to $1,875.00/year; however, the increase is not applicable to Debtor's case as it was commenced prior to February 21, 2013. See 11 U.S.C. §104(c).

28

compelling, constituting "special circumstances" for the excess Debtor is paying for this education.  See <u>Ransom v. FIA Card Servs., N.A. (In re Ransom)</u>, 577 F.3d 1026, 1031 (9th Cir. 2009) <u>aff'd</u>, __ U.S. __ 131 S.Ct. 716 (2011)(a debtor is not "stuck" with the standards of §707(b)(2)(A) as one of the safeguards for an above median chapter 13 debtor is to prove "special circumstances" under §707(b)(2)(B)); <u>see also</u>, <u>In re Maura</u>, 491 B.R. 493 (Bankr. E.D. Mich. 2013)(analyzing private school tuition under 707(b)(2)(B)'s "special circumstances" language).  "If a debtor demonstrates that the local public school was not an adequate alternative, the court may consider these [private school] expenses reasonable within the particular circumstances of the case."  <u>In re Bookmyer</u>, 2011 WL 6202893 *6 (Bankr. S.D. Fla. April 14, 2011) <u>citing</u> <u>In re Watson</u>, 309 B.R. 652, 660 (1st Cir. B.A.P. 2004).

Debtor's daughter currently is attending a private school and she also is going to a special speech program once a week at a public school.  Debtor's daughter has been diagnosed with ADHD and other auditory and speech disorders.  Her daughter has been attending private school since first grade where a special plan is in place designed to specifically address her needs.

At the hearing, Debtor testified the smaller class size (7 students) and environment offered in private school helps her child

29

receive the attention her condition requires.  In support of her testimony, Debtor submitted reports prepared by teachers and other professionals showing her daughter has difficulty relating to peers and adults and still having learning difficulties even in a class size of 7.

While there was no direct evidence of bullying, Debtor expressed concerns as to possible bullying her daughter may be subject to in the public schools due to the difficulty in relating to peers and adults, along with her speech and auditory problems, as expressed in the reports.  Based on the specific facts of this case, Debtor's testimony and the documented third-party reports and assessments of her daughter's special needs for the smaller class size and the specialized attention, I find Debtor has established that the excess expense is "reasonable and necessary" and therefore Debtor is entitled to the full deduction for private school tuition.

Furthermore, I find the private school tuition to be a special circumstance.  As previously stated, Debtor's daughter has special needs that require specialized attention.  This is not the case where a parent just desires to send their child to private schools.  See eg., In re Golematis, 2012 WL 3583154 *1 (Bankr. E.D. Mich. Aug. 17, 2012)(denying private school expense because debtors did not claim their children's educational needs require private

30

schooling, nor did they identify scholastic shortcomings of their public school). Rather this case is one where Debtor has established the special educational needs of her daughter and the need for the specialized attention and small class sizes available in the private school. In <u>In re Webb</u>, 262 B.R. 685 (Bankr. E.D. Tex. 2001), the court allowed the private school tuition deduction where the evidence established that the debtor's son had problems which raised significant doubts as to whether he could be properly educated without the specific assistance and attention offered in the private school. <u>In re Webb</u>, 262 B.R. 685 (Bankr. E.D. Tex. 2001)(12 year old son had ADHD as well as other problems);[4] <u>see also</u> <u>In re Cleary</u>, 357 B.R. 369, 374 (Bankr. D.S.C. 2006)(under the special circumstances of the case, the debtors were not limited to the statutory ceiling set for in §707(b)(2) for private school tuition); <u>In re Crim</u>, 445 B.R. 868, 871 (Bankr. M.D. Tenn. 2011)(not limiting debtors to the statutory limit but finding the entire amount of the private school tuition for debtors' chronically ill daughter to be a reasonable and necessary expense of the debtors); <u>In re Nicola</u>, 244 B.R. 795 (Bankr. N.D. Ill. 2000)(considering the totality of circumstances, including the amount to be paid, the fact

---

[4]    Although <u>Webb</u> is a pre-BAPCPA case its analysis of the necessity of the excess tuition expense is applicable to the current case.

31

that the child had always attended private school, the religious beliefs of the debtors, and some evidence of the inadequacy of the local public schools, in finding Catholic school tuition to be a reasonably necessary expense). Given the specific facts of this case, I find Debtor has established special circumstances to allow for these expenses.

For the foregoing reasons, the Trustee's Objection to Confirmation is ORDERED OVERRULED. Debtor shall amend her means test in accordance with the terms of this Order and the Clerk of Court is directed to continue the confirmation hearing to the next available day.

_Susan D. Barrett_
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this ___6th___ day of September, 2013.

32